Wayne E. Borgeest
Joan M. Gilbride
Robert A. Benjamin
KAUFMAN BORGEEST & RYAN LLP
200 Summit Lake Dr
Valhalla, New York 10595
(914) 741-6100 (Telephone)
(914) 741-0025 (Facsimile)
wborgeest@kbrlaw.com
jgilbride@kbrlaw.com
rbenjamin@kbrlaw.com

*Attorneys for Axis Reinsurance Company*

DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

AXIS REINSURANCE COMPANY,                :           No. 07-CV-7924 (GEL)

               Plaintiff,                :

    v.                                      :

PHILLIP R. BENNETT, et al.,                  :

              Defendants.              :

------------------------------------------------------------------ X

In re                                                  :           Chapter 11

REFCO, INC., et al.,                             :           Case No. 05-60006 (RDD)

              Debtors.                  :           Jointly Administered

------------------------------------------------------------------ X

AXIS REINSURANCE COMPANY,                :           Adv. Proc. No. 07-1712-RDD

              Plaintiff,                :

    v.                                      :

PHILLIP R. BENNETT, et al.,                  :

              Defendants.              :

```
------------------------------------------------------------- X
TONE N. GRANT, et al.,                                        :   Adv. Proc. 07-2005-RDD
                                                              :
                Plaintiffs,                                   :
        v.                                                    :
                                                              :
AXIS REINSURANCE COMPANY,                                     :
                                                              :
                Defendant.                                    :
                                                              :
------------------------------------------------------------- X
LEO R. BREITMAN, et al.,                                      :   Adv. Proc. No. 07-2032-RDD
                                                              :
                Plaintiffs,                                   :
        v.                                                    :
                                                              :
AXIS REINSURANCE COMPANY,                                     :
                                                              :
                Defendant.                                    :
                                                              :
------------------------------------------------------------- X
AXIS REINSURANCE COMPANY,                                     :   (1) No. 07-CV-9420-GEL
                                                              :   (2) No. 07-CV-9842-GEL
                Plaintiff,                                    :   (3) No. 07-CV-10302-GEL
        v.                                                    :
                                                              :
PHILLIP R. BENNETT, et al.,                                   :
                                                              :
                Defendants.                                   :
                                                              :
------------------------------------------------------------- X
TONE N. GRANT, et al.,                                        :   No. 07-CV-9843-GEL
                                                              :
                Plaintiffs,                                   :
        v.                                                    :
                                                              :
AXIS REINSURANCE COMPANY,                                     :
                                                              :
                Defendant.                                    :
                                                              :
------------------------------------------------------------- X
```

## APPELLANT'S BRIEF IN REPLY

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 1

I. Axis Can Deny Coverage Based On Its Reasonable Determination Where The Exclusions It Relies On Do Not Explicitly Require A Final Adjudication of Fact ................................................................................................................. 2

II. The Insureds Have Already Admitted Sufficient Facts To Confirm Axis's Denial of Coverage ................................................................................................ 8

III. The Bankruptcy Court Order Must Be Reversed In The Interest Of Public Policy, To Prevent A Manifest Injustice To Axis, And To Discourage Insurance Fraud .................................................................................................... 11

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Acquista v. New York Life Ins. Co.*, 285 A.D.2d 73, 730 N.Y.S.2d 272 (1st Dep't 2001) . 2

*Assoc. Elec. & Gas Ins. Srvcs, Ltd., v. Rigas*, 382 F.Supp. 2d 685 (E.D.P.A. 2004) ......... 6

*Carlin Equities Corp. v. Houston Casualty Co.*, 2007 WL 2456958
Index No. 05-cv-9508-LAP (S.D.N.Y. 2007) ................................................................... 9

*Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687 (N.Y. 2002) ........ 12

*Cornellier v. Am. Cas. Co.*, 389 F.2d 641 (2d Cir. 1968) ................................................. 12

*Federal Ins. Co. v. Kozlowski*, 784 N.Y.S.2d 920 (N.Y. Supp. 2004) ............................... 7

*In re WorldCom, Inc. Securities Litigation*, 354 F.Supp. 2d 455 (S.D.N.Y. 2004) ............ 7

*Little v. MGIC Indem. Corp.*, 836 F.2d 789 (3d Cir. 1987) ................................................ 6

*New York Univ. v. First Financial Ins. Co.*, 322 F.3d 750 (2d Cir. 2003) ......................... 3

*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*
391 F.Supp. 2d 541 (S.D. Tex. 2005) .............................................................................. 6

*Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*,
472 F.3d 33 (2d Cir. 2006) ............................................................................................... 9

*PepsiCo, Inc. v. Cont'l Cas. Co.*, 640 F.Supp. 656 (S.D.N.Y. 1986) ................................. 6

*Shapiro v. American Home Assur. Co.*, 584 F.Supp. 1245 (D.Mass. 1984) ................... 10

## INTRODUCTION

An Insurer such as Axis has the right to make initial coverage determinations on its own accord, subject to its reasonable analysis of the claim submitted and the terms and conditions of the insurance contract. If an Insurer such as Axis acts unreasonably when making that initial determination, the Insureds have legal remedies available. Axis made the reasonable determination that this Claim was excluded from coverage under the Axis Policy. The recent guilty plea of Santo Maggio to securities fraud underscores the propriety of Axis's denial of coverage.

The advancement of Defense Costs, pursuant to the terms of the Axis Policy, is only triggered for a "covered" claim. The Bankruptcy Court's distorted analysis addressed advancement under the *assumption* of coverage – something it previously said it could not determine. The Insureds' brief in opposition acknowledges that the Bankruptcy Court needed to look to the exclusions to determine if advancement of Defense Costs were required. Opposition brief at 27. The Bankruptcy Court should be reversed because, in doing so, it violated the boundaries it set for itself. It was impossible for the Bankruptcy Court to determine that "covered Defense Costs" must be advanced, without first establishing whether or not they are "covered."

## ARGUMENT

The Insureds' opposition brief focuses on two propositions, both of which are entirely without merit.[1] First, the Insureds incorrectly assert that an Insurer is without the

---

[1] The Insureds also argue that Axis waived its appeal of the dismissal without prejudice of its Complaint by the Bankruptcy Court. Axis's disagrees with the Bankruptcy Court's dismissal without prejudice, but not the resulting effect, which placed that Complaint before Your Honor.

1

right to determine whether or not a matter submitted to it is covered by the insurance contract. Decades of case law and practice require an Insurer to analyze claims submitted under its policy terms and make coverage determinations, subject to litigation by its Insureds if its coverage determination is incorrect. An Insurer's denial of coverage is made at its own peril if the Insurer is wrong. Second, the Insureds mistakenly assert that the facts necessary to support Axis's coverage disclaimer are in dispute. Prior to any lawsuits or bankruptcy filings, Refco itself admitted that Bennett had "hidden" hundreds of millions of dollars of losses from investors. This admission of Bennett's knowledge and wrongdoing is further supported by the recent guilty plea of a senior Refco executive to criminal securities fraud. There can be no legitimate dispute that Bennett and others acted to defraud scores of individuals and entities, including Axis.

Finally, there is absolutely no public policy served by permitting the Insureds to reap the benefits of an admitted fraud. An affirmation by this Court of the Bankruptcy Court's Order would provide judicial approval for any director or officer in the midst of committing a massive fraud, to lie to their Insurer with impunity when explicitly asked about such fraudulent activity.

### I. Axis Can Deny Coverage Based On Its Reasonable Determination Where The Exclusions It Relies On Do Not Explicitly Require A Final Adjudication of Fact

The Insureds argue that an Insurer cannot make coverage determinations on its own. This makes no sense. Insureds submit claims to their Insurer and the Insurer responds by: (1) accepting coverage, (2) accepting coverage subject to a reservation of rights, or (3) denying coverage. If an Insurer wrongfully denies coverage, it will be subject to a lawsuit from its Insured for damages. *See e.g., Acquista v. New York Life Ins.*

2

*Co.*, 285 A.D.2d 73, 730 N.Y.S.2d 272 (1st Dep't 2001). The Insureds argue that Axis asserts an "unfettered right to" determine coverage. Opposition Brief at 32. No Insurer, including Axis, takes a denial of coverage lightly. By denying coverage an Insurer exposes itself to claims by its Insureds if its denial is improper. There is also the business reality that Insurers who improperly deny claims or take overly aggressive coverage positions are less desirable in the marketplace. Decades of law and practice permit an Insurer to review claims submitted to it and make coverage decisions. *See e.g., New York Univ. v. First Financial Ins. Co.*, 322 F.3d 750, 754 (2d Cir. 2003) ("Under New York law, it is clear that insurers are afforded the opportunity to investigate an insured's claim in order to determine whether coverage is appropriate.").

In this matter, Axis reviewed the claim submitted and determined, based on the four corners of the complaint and Refco's public admissions through 8-K filings with the SEC, that the Axis Policy excluded coverage for this Claim. Once an Insurer denies coverage, that is the end of the analysis. An Insured is certainly free to challenge that denial in court, but denial is the Insurer's choice – and is heavily weighed against significant exposure if the decision is improperly made.

The Insureds strain to apply terms of the Policy which are only applicable where the Insurer has <u>not</u> denied coverage. The advancement provision speaks to the timing of payment for a covered claim – especially in circumstances where the Insurer has reserved the right to deny coverage based on future adjudications. *See* Exhibit I, Condition D(2) to the Declaration of Joan M. Gilbride, dated November 28, 2007 ("Gilbride App. Decl."). This is precisely the position of the primary and first excess Insurers. Each did not deny coverage, but rather reserved the right to deny coverage based on fraud and

3

personal profit exclusions – both of which explicitly require a final adjudication of fact. Those Insurers could not deny coverage (their policies do not contain the same exclusions as the Axis Policy, and neither obtained a warranty), and the advancement provision functioned to require that they advance covered defense costs, until such time as it was finally adjudicated that the fraud and personal profit exclusions were triggered to deny coverage.[2]

The Policy is explicit that some exclusions require an adjudication by a court before they are triggered. Other exclusions are left to the Insurer's judgment when responding to a request for coverage. Notably, none of the exclusions that Axis relies on to deny coverage require a final adjudication of fact. This is the main difference between exclusions which require a final adjudication and those which do not – whether the Insurer or a Court can determine if (or when) they are triggered.

The Insureds argue that every exclusion in the Policy is subject to a final adjudication, saying "such defense costs are 'covered' for purposes of the Insurer's obligation to advance unless and until a final determination is made that an exclusion applies." Opposition brief at 27. If the Insureds are correct, then there would be absolutely no reason for some exclusions to explicitly require a final adjudication, while others do not. The Insureds' position seeks to rewrite the Axis Policy to render each and

---

[2] Axis has also pointed to Condition D(3), which provides that where the Insurer has determined that a portion of the Claim is covered and a portion is not covered, the Insurer only must advance Defense Costs that the Insurer agrees are incurred in connection with the covered portion of the Claim. The Insureds are correct that Axis has not invoked this provision – instead, Axis uses this provision to illustrate the absurdity of the Bankruptcy Court's analysis. If Axis were to have denied coverage for 99% of the Claim, Condition D(3) would be triggered and there would be no argument that the Insurer has the power to make the initial determination of which Defense Costs will be paid. However, because Axis denied coverage for 100% of the Claim, Condition D(3) is not triggered, and the Bankruptcy Court says Axis must advance 100% of the Defense Costs. This absurd result demonstrates the Bankruptcy Court's flawed analysis.

4

every exclusion a "final adjudication" exclusion – something contrary to the express terms of the Axis Policy.

The Policy is clear which exclusions require a final adjudication of fact, and which do not. For example, Exclusion A concludes "this EXCLUSION (A) will apply only if there has been a final adjudication adverse to such Insured establishing that the Insured gained such a profit or advantage." Exclusion B concludes "this EXCLUSION (B) will apply only if there has been a final adjudication adverse to such Insured establishing that the Insured so acted." This final adjudication language is not found anywhere in the Warranty exclusion, in the exclusion in the Application, in the Knowledge Exclusion, or in the Pending and Prior Litigation Exclusion. None of the exclusions that Axis relies on to deny coverage require a final adjudication and, pursuant to the Policy terms, Axis is entitled to make the determination that they apply to the facts of this Claim to prevent coverage.[3] Having already determined that there is not coverage, the advancement provision – which only provides for advancement of "covered Defense Costs" – is never even reached in the analysis.

The Bankruptcy Court's bifurcation of the coverage and advancement issues put the cart before the horse. Without coverage, there can not be any advancement requirement under the Policy.[4] The Bankruptcy Court ignored this analytical process and jumped right over "coverage" to get to the advancement issue. This is precisely the flaw in the Bankruptcy Court's logic. Cases cited by the Insureds and relied upon by the

---

[3] Axis also does not rely on exclusion sections referenced by the Insureds at page 26 of their opposition. Their arguments in this respect are a red herring and completely inapplicable to Axis's basis for denying coverage.

[4] Counsel to Insureds already admitted that "you really can't litigate [the advancement issue] in the abstract by itself without the coverage under the policy also being in dispute." 8/30 Tr. at p. 11; Exhibit F to the Gilbride App. Decl

5

Bankruptcy Court either deal with rescission, which is not at issue in this case, or are based on exclusions which cannot by their terms be triggered without a future event – final adjudication. The Axis Policy is materially different from the policies at issue in these other cases. The Axis Policy only requires the advancement of "covered Defense Costs" and the exclusions relied upon by Axis are immediately applicable.

The Insureds cite several cases on page 22 of their brief which they incorrectly assert stand for the proposition that New York law requires a D&O insurer to advance defense costs where it has already denied coverage. Interestingly, the vast majority of the cases cited by the Insureds **involve an insurer which denied coverage based on a "final adjudication" exclusion**. Not surprisingly, those Courts held that those insurers had to advance defense costs until they received a final adjudication sufficient to trigger the exclusions they relied upon to prematurely deny coverage. *PepsiCo, Inc. v. Cont'l Cas. Co.*, 640 F.Supp. 656, 659 (S.D.N.Y. 1986) (exclusion reads "unless a judgment or other final adjudication thereof adverse to the directors and officers shall establish that the acts of active and deliberate dishonesty committed. . ."); *Little v. MGIC Indem. Corp.*, 836 F.2d 789, 792 (3d Cir. 1987) (exclusion reads "unless a judgment or other final adjudication thereof adverse to the Directors or Officers shall establish that acts of active and deliberate dishonesty committed . . ."); *Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 391 F.Supp. 2d 541, 750 (S.D. Tex. 2005) (exclusion reads "if a final adjudication establishes that acts of active and deliberate dishonesty were committed. . ."); *Assoc. Elec. & Gas Ins. Srvcs, Ltd., v. Rigas*, 382 F.Supp. 2d 685, 694 (E.D.P.A. 2004) (exclusions read "a judgment or other final adjudication adverse to such DIRECTOR or OFFICER establishes that he in fact gains such personal profit. . . if a

final adjudication establishes that acts of active and deliberate dishonesty were committed or attempted. . .").

Notably, the exclusion at issue in *Kozlowski*, upon which the Insureds heavily rely, also contained a final adjudication requirement. *Federal Ins. Co. v. Kozlowski*, 784 N.Y.S.2d 920, *2 (N.Y. Supp. 2004) (in-fact final adjudication requirement reads "having gained in fact any personal profit, remuneration or advantage"). It is not at all surprising that courts would require the advancement of defense costs where the express policy terms require a final adjudication before the exclusion can be triggered. Moreover, the case relied upon heavily by the Bankruptcy Court, *WorldCom*, did not involve exclusions at all. *In re WorldCom, Inc. Securities Litigation*, 354 F.Supp. 2d 455, 462 (S.D.N.Y. 2004) ("[the insurer] does not dispute that the claims against WorldCom and its directors fall within the policies' definition of covered claims. Nor does it contest that the insurance policies entitle Roberts to defense costs.") Axis, however, relies on exclusions which do <u>not</u> contain a final adjudication requirement, so these cases offer no assistance in supporting Insureds' position.

*WorldCom* is inapplicable to the case at bar. As detailed in the side-by-side analysis in Axis's opening brief on appeal, the WorldCom policy explicitly required advancement prior to a determination of coverage. The Axis Policy, however, takes the opposite approach – only requiring advancement of Defense Costs for "covered" Claims. Another significant difference is that Axis relies on the terms of the Policy to exclude coverage, but the WorldCom Insurers did not contest coverage under the terms of the policy – rather, they asserted that the Policy was void *ab initio*. In other words, they did not seek to enforce the plain terms of their contract with their Insureds, but rather sought

7

a determination that no contract existed. Under that scenario, the Court determined that the contract should be enforced until there was a ruling that it did not exist. Here, Axis seeks only to enforce the plain terms of its contract.

Axis has the ability to review the Claim submitted and deny coverage if it determines the Claim is excluded by the terms of the insurance contract. Having denied coverage for this Claim, and without determining that Axis's coverage disclaimer was improper, the Bankruptcy Court did not have a basis in the Axis Policy or at law to order the advancement of Defense Costs.

## II. The Insureds Have Already Admitted Sufficient Facts To Confirm Axis's Denial of Coverage

The facts supporting Axis's denial of coverage have never been in dispute. On October 11, 2005, Refco admitted in SEC filings that, over a seven-year period, its former Chairman, President and Chief Executive Officer, Phillip Bennett, hid hundreds of millions of dollars of uncollectible receivables that should have shown up on Refco's balance sheet as related-party transactions. *See* Gilbride App. Decl. at Exhibit A. A detailed accounting of the fraud has also been recorded in the 363 page report compiled by the Bankruptcy Examiner. Bankr. S.D.N.Y. filed July 11, 2007 (05-60006, Doc. 5530). There is no dispute that Bennett, and others, hid millions.

In three separate and distinct documents, the Insureds warranted to Axis that if any of the Insureds knew of anything which might result in a Claim under the Policy, that Claim would be excluded from coverage for all Insureds.[5] These provisions are each part

---

[5] The purpose of these provisions was to ensure that the Policy, which incepted on the same day as the Refco IPO, would only provide coverage from the IPO forward. In other words, the intent was to start with a clean slate.

8

of the Axis Policy and none of these provisions require a "final adjudication" or "in-fact" finding. Axis reviewed the plethora of lawsuits submitted for coverage arising out of Refco's demise, Refco's filings with the SEC regarding the active participation in the fraud by Bennett, and, on March 6, 2006, denied coverage based, in part, on these three provisions.

The Insureds have now admitted that analysis of exclusions is permissible in determining advancement – "The Insureds readily acknowledge that 'covered' in the first sentence [of the advancement provision] includes exclusions, to the extent that the application of an exclusion can be determined at the time Defense Costs are incurred on the face of the pleading in the underlying action for which they are incurred." Opposition brief at 27. This is precisely the analysis Axis undertook to deny coverage. This is also the analysis the *Carlin Equities* Court undertook – only ordering the advancement of defense costs after an analysis of the exclusions the insurer asserted were applicable to bar coverage. *Carlin Equities Corp. v. Houston Casualty Co.*, 2007 WL 2456958, Index No. 05-cv-9508-LAP (SDNY 2007). *See also Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33 (2d Cir. 2006) (the protection the Insured is entitled to is the net balance of the insuring agreement minus the exclusions).

On December 19, 2007, Santo Maggio pleaded guilty to – among several other things – securities fraud – and he admitted to knowledge of the fraud at Refco prior to the underwriting of the Axis Policy. *See* Exhibit A to the December 20, 2007 letter to the Court. As is detailed in his allocution, Mr. Maggio admitted that from the late 1990s to October 2000, he "participated with others to hide the true financial health of Refco from banks, counter-parties, auditors and investors." Exhibit A, at 17. He further admitted

9

that "with my knowledge and active participation Refco's substantial losses were covered up as revenues padded [sic] and certain operating expenses were moved off its book." Exhibit A, at 17-8. Maggio further implicated his coconspirators, Bennett, Trosten and Grant, saying "as a result of my conduct and that of my coconspirators false financial statements were issued. . ." Exhibit A, at 18. To the extent that there ever was any dispute as to the facts upon which Axis based its coverage disclaimer – and Axis contends there never was any such dispute – Mr. Maggio's guilty plea puts any possible disputes to rest. One of the Insureds has now admitted that he, and others including Bennett, conspired to defraud banks, counterparties, auditors and investors. There can be no doubt that these Insureds knew that their actions, if discovered, would result in a Claim under the Policy. This is precisely the situation that Axis sought to avoid in underwriting this risk. Three separate provisions were employed to ensure that Axis would not have to do the very thing the Bankruptcy Court has ordered – pay for a Claim based on things the Insureds[6] knew about before the IPO.[7]

Axis denied coverage and every development since Axis's denial has only served to confirm that Axis's analysis of the facts was correct. Notably, in the hundreds – if not thousands – of pages which have been drafted thus far in this insurance litigation, the

---

[6] Axis only needs to demonstrate that any single insured had knowledge a Claim might be made to defeat coverage for all Insureds based on the Warranty, the exclusion in the Application and the Knowledge Exclusion. Each of these exclusions is worded such that knowledge by any one excludes coverage for all. For example, if Axis demonstrates Bennett's knowledge, coverage for the Claim is excluded for all Insureds. *See e.g., Shapiro v. American Home Assur. Co.*, 584 F.Supp. 1245 (D.Mass. 1984) (excluding coverage for 'innocent insureds' based on warranty).

[7] The Insureds assert a "no harm, no foul" defense through the repayment provision. This is a red herring. The Insureds have steadfastly refused to provide Axis with any assurance that they could or would be able to repay Axis the millions of dollars Axis has advanced to them based on the Bankruptcy Court Order. The Bankruptcy Court denied Axis's request for a security bond and, based on the substantial litigation and litany of creditors these Insureds face, Axis has no realistic possibility of ultimately recovering the millions of dollars advanced.

Insureds have never once alleged that the underlying factual basis for Axis's coverage denial was wrong.

### III. The Bankruptcy Court Order Must Be Reversed In The Interest Of Public Policy, To Prevent A Manifest Injustice To Axis, And To Discourage Insurance Fraud

No public policy is served by gifting these Insureds millions of dollars to reward several of them for successfully defrauding their Insurer. It has been admitted that several of these Insureds knew that they were engaging in securities fraud when they contracted with Axis for D&O insurance. By granting advancement under these circumstances, and under the terms of the Axis Policy, the Bankruptcy Court rewarded these Insureds. It bears repeating that **these Insureds have never represented to any Court that they would be unable to pay for their own defense** if advancement of Defense Costs from Axis were denied.

The Insureds say that "The claims arising from the Underlying Actions are precisely the types of claims for which the Insureds would have thought themselves covered." Opposition brief at 32. This is exactly why public policy should not reward their fraud. It is as if they purchased fire insurance while their house was ablaze while telling the Insurer that all was well. Several of these Insureds *knew* that they were committing fraud when they purchased the Axis Policy. The Axis Policy expressly says that it does not cover anything they already knew about which might give rise to a Claim. The Insureds ask the Court to ignore every word of the Axis Policy other than the words "D&O Insurance" at the top of the first page. This is not some take-it-or-leave-it automobile policy purchased by John Q. Public from a billion dollar insurance company.

This is a business contract where every term was the result of negotiations by insurance professionals on both sides of the contract. The terms of this contract must be afforded the same deference any court would afford to a contract between Verizon and AT&T. For the Insureds to make generalized assertions of "key components" of typical D&O policies is disingenuous. D&O insurance is different from other forms of insurance because the terms of each policy are different and every term must be given meaning. *Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687, 693 (N.Y. 2002) (insurance policy to be construed in a manner that "leaves no provision without force and effect"); s*ee also Cornellier v. Am. Cas. Co.*, 389 F.2d 641, 644 (2d Cir. 1968) (function of New York Courts is not to rewrite insurance policies so as to provide coverage which a court might consider more equitable).

Axis has determined that the terms of the insurance contract do not require its performance. Accordingly, it has refused to perform. The Insureds disagree. Instead of reviewing the terms of this particular insurance contract, the Bankruptcy Court looked at everything BUT the terms of this contract. The Bankruptcy Court looked at other policies with different advancement language than the language in the Axis Policy. The Bankruptcy Court looked at cases interpreting different types of exclusions than the exclusions Axis relies upon to deny coverage. The Bankruptcy Court considered a completely unsubstantiated and unasserted "harm" to these Insureds if the Insurer were not required to fund their defense. If there were such a strong public policy that directors and officers should never have to pay for their own defense, why hasn't the legislature mandated that every public company must procure D&O insurance? It has not done so.

The Insureds assert that Axis's position would render the insurance policy at issue "illusory." This makes no sense. Axis has not said that no Claim under the Policy could ever be the subject of coverage. The Policy has not been rescinded. Axis has merely followed the Policy provisions which say that if any of the Insureds knew about facts, as of a certain date, which might give rise to a particular Claim, any such Claim would be excluded. If Refco had made a misrepresentation in its Q1 financial statements, such a misrepresentation might very well be the subject of coverage. What is excluded is the situation where the Insureds already knew the house was ablaze when they purchased the insurance.

Axis agrees with the Insureds that they are "entitled to receive the benefits they contracted for." Opposition brief at 34. The Bankruptcy Court, however, awarded these Insureds far *more* than they contracted for. The insurance contract does not provide for advancement of Defense Costs where the Insurer has denied coverage. The Insureds should sue Axis for coverage – and if they win – they can recover damages. The interim relief fashioned by the Bankruptcy Court serves a gross injustice to Axis, ignores the law, ignores the contract provisions, and rewards the Insureds for insurance fraud.

## CONCLUSION

The Bankruptcy Court's ruling that Axis must pay Defense Costs is not supported by the plain terms of the insurance policy, the law or public policy. Moreover, it is inconsistent with the Bankruptcy Court's own ruling issued at the same time dismissing Axis's declaratory judgment complaint. This Court must reverse the fundamentally flawed and inequitable result reached by the Bankruptcy Court. That result goes well

beyond the ruling of any other court and does so in a manner that works a gross injustice to Axis and to the judicial process.

Dated: January 9, 2008

                                    Respectfully submitted,

                                    KAUFMAN BORGEEST & RYAN LLP

By: _____
        Wayne E. Borgeest
        Joan M. Gilbride
        Robert A. Benjamin
        200 Summit Lake Drive
        Valhalla, New York 10595
        (914) 741-6100 (Telephone)
        (914) 741-0025 (Facsimile)
        wborgeest@kbrlaw.com
        jgilbride@kbrlaw.com
        rbenjamin@kbrlaw.com

        *Attorneys for Plaintiff Appellant*
        *Axis Reinsurance Company*