# KAUFMAN BORGEEST & RYAN LLP

ANDREW S. KAUFMAN†
WAYNE E. BORGEEST
JULIANNA RYAN
LEE E. BERGER
LORETTA A. KREZ*
JOAN M. GILBRIDE††
JONATHAN D. RUBIN‡
JUDITH M. FISHER*
A. MICHAEL FURMAN*
MICHAEL P. MEZZACAPPA*‡
DOUGLAS J. FITZMORRIS
STEVEN D. WEINER
SCOTT A. SCHECHTER*
CHRISTOPHER E. DiGIACINTO*
ANN MARIE COLLINS*††
JONATHAN B. BRUNO*
PAUL J. COLUCCI

OF COUNSEL:
MARIBETH SLEVIN
SHERRI M. FELDMAN*
MARGARET J. DAVINO*††

APPELLATE COUNSEL:
JACQUELINE MANDELL

JONATHAN R. HAMMERMAN
THOMAS GIBBONS
HEATHER LASCHEWER*
CAROL S. DOTY†††
ADEOLA I. ADELE
BARBARA-ANN M. COSTELLO
MELINDA B. MARGOLIES*
JEFFREY S. WHITTINGTON
ROCCO P. MATRA◊
ELIZABETH O'BRIEN TOTTEN
RICHARD A. PRETTI
REBECCA KILDUFF
KRISTOPHER M. DENNIS*
CHRISTINE HEENAN
BELINDA DODDS-MARSHALL*‡
JULIE A. KEEGAN
STEPHANIE B. GITNIK
JEFFREY W. KLEINER*
FRANK K. STAIANO††
JACQUELINE B. TOMASSO
JENNIFER PILZ
GINA M. HOGUE*
MICHAEL R. JANES
YAEL WEPMAN*

R. EVON HOWARD☼
LEONARD B. COOPER†
JULIE ANN LEVINSOHN⋈
JOHN B. MULLAHY*
JEFFREY C. GERSON††
CATHERINE KELLEHER*
REBECCA GOODMAN
PETER IANNACE‡‡
ANDREW R. JONES
CHRISTOPHER GOMPRECHT
JAMES T. DE SILVA
KEITH L. KAPLAN††
DANIEL C. LYNCH*
VINCENT C. ANSALDI††
BRENDA CORREA*
DAVID J. VARRIALE*††
DOUGLAS J. DOMSKY
KIMBERLY CRESPO
TIMOTHY E. MCCARTHY*
JEFFREY A. GRALNICK
TRACEY REISER-PERTOSO††
KATHERINE J. HOOPER††
DAMIEN SMITH
ANDREW S. KOWLOWITZ*•

† ALSO ADMITTED IN PA
* ALSO ADMITTED IN NJ
‡ ALSO ADMITTED IN DC
†† ALSO ADMITTED IN CT
‡‡ ALSO ADMITTED IN MA
◊ ALSO ADMITTED IN TX
♦ ALSO ADMITTED IN FL
* ADMITTED IN FL ONLY
■ ADMITTED IN NJ ONLY
□ ADMITTED IN CA ONLY
⋈ ADMITTED IN NJ & MA ONLY
• ADMITTED IN CA, VA, DC ONLY
☼ BARRISTER AT LAW
   ADMITTED IN ENGLAND & WALES

ATTORNEYS AT LAW

200 SUMMIT LAKE DRIVE
VALHALLA, New York 10595

TELEPHONE: 914-741-6100
FACSIMILE: 914-741-0025
www.kbrlaw.com

March 6, 2006

**CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

Pam Sylwestrzak
Senior Vice President
Marsh USA, Inc.
500 West Monroe Street
Chicago, IL 60661-3630

Re:     Insured         :     Refco, Inc.
        Claimant        :     Various – *See* Exhibit A, attached
        Policy No.      :     506300
        Claim No.       :     BH 9826
        Our File No.    :     481.001

Dear Pam:

As you know, we represent AXIS US Insurance ("Axis"). This is further to our December 16, 2005 letter, wherein we generally reserved all of Axis's rights in law and equity, as well as our March 1, 2006 letter attaching the issued policy. We are attaching to this letter, as Exhibit A, a schedule of all matters for which Axis has received notice under the captioned policy (the "Noticed Matters"). **We request that you immediately review the attached Exhibit A and advise us if you believe any matter noticed to Axis is not listed.** We again also ask that all communications on this matter be directed to the undersigned, on behalf of Axis.

We are directing this letter to you as the authorized agent of the Insureds, including the individual Insured Persons. To the extent that you are not acting as the authorized representative for any of the Insureds, please immediately advise us of the proper representative for any such Insureds.

The purpose of this letter is to describe the workings of the Axis Policy, to convey Axis's position regarding coverage, and to reserve Axis's rights. Axis has reviewed the Noticed Matters in light of the Policy provisions. Please be aware that we do not

NEW YORK CITY OFFICE
99 PARK AVENUE
NEW YORK, NEW YORK 10016
TELEPHONE: 212-980-9600
FACSIMILE: 212-980-9291

LONG ISLAND OFFICE
1305 FRANKLIN AVENUE
GARDEN CITY, NEW YORK 11530
TELEPHONE: 516-248-6000
FACSIMILE: 516-248-0677

CALIFORNIA OFFICE
CORPORATE CENTER AT MALIBU CANYON
26635 WEST AGOURA ROAD
CALABASAS, CALIFORNIA 91302
TELEPHONE: 818-880-0992
FACSIMILE: 818-880-0993

NEW JERSEY OFFICE
9 CAMPUS DRIVE
PARSIPPANY, NEW JERSEY 07054
TELEPHONE: 973-451-9600
FACSIMILE: 973-451-0150

attribute any merit to the Noticed Matters, and reference them herein only to describe the matter submitted for coverage. In this letter we also make certain requests for information. Those requests are generally in bold. Should further pertinent information come to light, Axis may revise its position accordingly, and it reserves the right to do so. Nothing in this letter, including any requests for information, is intended to waive any rights Axis may have under the Policy, at law, or in equity, all of which are expressly reserved. Axis's position is necessarily based upon information that has been made available to us at this point. If you have any other information we should consider, please let us know. Axis will reevaluate its coverage position described herein upon the receipt of any relevant information.

We have had the opportunity to review the Noticed Matters, as well as the various coverage letters submitted by the primary carrier, US Specialty Insurance Company ("HCC" and the "Primary Policy") and the first excess carrier, Lexington Insurance Company ("Lexington" and the "Lexington Policy"). For the reasons set forth below, Axis is denying coverage for each of the Noticed Matters. Additionally, Axis expressly reserves its right to rescind the captioned policy and any prior policy.

## THE LITIGATION
### Noticed Matters

To date, Axis has received notice of twenty-four matters. *See* Schedule of Litigation, attached at Exhibit A. The Noticed Matters consist of: (1) federal securities putative class actions; (2) a derivative action; (3) a criminal action; (4) state court tort actions; (4) a breach of contract and fraud action (Sillam); (5) adversary proceedings brought in bankruptcy court; and (6) an action based on fraudulently obtaining a loan (BAWAG).

**Securities Class Actions**

1. Frontpoint Financial Services, Inc., et al. v. Refco Inc., et al., No. 05-cv-08663-GEL, complaint filed (S.D.N.Y., 10/11/05);

2. Jonathan Glaubach, et al. v. Refco Inc., et al., No. 05-cv-08692, complaint filed (S.D.N.Y., 10/12/05);

3. Miriam Lieber, et al. v. Refco Inc., et al., No. 05-cv-08667-LAP, complaint filed (S.D.N.Y., 10/12/05);

4. Sandra E. Weiss, et al. v. Refco Inc., et al., No. 05-cv-08691-GEL, complaint filed (S.D.N.Y., 10/12/05);

5. Anthony L. Wakefield, et al. v. Refco Inc., et al., No. 05-cv-08742-GEL, complaint filed (S.D.N.Y., 10/14/05);

6. Jacob Baker, et al. v. Phillip R. Bennett, et al., No. 05-cv-08923, complaint filed (S.D.N.Y., 10/19/05);

7. Craig Becker, et al. v. Refco Inc., et al., No. 05-cv-08929-GEL, complaint filed (S.D.N.Y., 10/20/05);

8. Bruce Nathanson, et al. v. Phillip R. Bennett, et al., No. 05-cv-08926-GEL, complaint filed (S.D.N.Y., 10/20/05);

9. American Financial International Group – Asia, LLC, et al. v. Refco Inc., et al., No. 05-cv-08988-PKC, complaint filed (S.D.N.Y., 10/21/05);

10. Ravindra Mettupatti, et al. v. Phillip R. Bennett, et al., No. 05-cv-09048, complaint filed (S.D.N.Y., 10/24/05);

11. Todd Weiss, et al. v. Phillip R. Bennett and Gerald M. Sherer, No. 05-cv-09126, complaint filed (S.D.N.Y., 10/26/05);

12. Scott K. Weit, et al. v. Phillip R. Bennett, et al., No. 05-cv-09611-GEL, complaint filed (S.D.N.Y., 11/11/05);

13. City of Pontiac General Employees' Retirement System, et al. v. Phillip R. Bennett, et al., No. No. 05-cv-09941, complaint filed (S.D.N.Y., 11/23/05).

**Shareholder Derivative Action**

14. Verun Mehta, et al. v. Phillip R. Bennett, et al., No. 05-cv-08748, complaint filed (S.D.N.Y. 10/14/05).

**Criminal Proceedings**

15. United States of America v. Phillip R. Bennett, et al., No. 05-MAG 1720, complaint filed (S.D.N.Y. 10/12/05).

**State Court Actions**

16. Banesco Holding C.A., et al. v. Refco Inc., et al., No. 05603681 (Supreme Court of New York, 10/17/05);

17. Miura Financial Services v. Refco Inc., et al., No. 05603683 (Supreme Court of New York, 10/17/05);

18. <u>Multiplicas Casa De Bolsa v. Refco Inc., et al.</u>, No. 05603683 (Supreme Court of New York, 10/17/05).

**The <u>Sillam</u> Action**

19. <u>Bankruptcy Trust of Gerard Sillam v. Refco Group, LLC, et al.</u>, No. 05603931 (Supreme Court of New York 11/04/05).

**Adversary Actions**

20. <u>Markwood Investments v. Refco Capital Markets, Ltd and Refco Securities LLC</u>, No. 05-03166-rdd (Bankr. S.D.N.Y., 11/17/05);

21. <u>Banco De America, S.A. v. Refco Capital Markets, Ltd.</u>, No. 05-03171-rdd (Bankr. S.D.N.Y., 11/18/05);

22. <u>BAC International Bank v. Refco Capital Markets, Ltd.</u>, No. 05-03170-rdd (Bankr. S.D.N.Y., 11/18/05);

23. <u>Reserve Invest (Cyprus) Ltd v. Refco Capital Markets, Ltd., Michael W. Morrison, and Richard Heis</u>, No. 05-03168-rdd (Bankr. S.D.N.Y., 11/18/05).

**The <u>BAWAG</u> Action**

24. <u>BAWAG P.S.K., et al. v. Refco, Inc., et al.</u>, No. 05-03161-rdd (Bankr. S.D.N.Y., 11/16/05).

### D&O INSURANCE PROGRAM

Refco, through its broker Marsh, approached various insurers in July 2004 attempting to place a tower of Private Company D&O insurance in anticipation of an eventual public offering. As a result of this solicitation, Refco Group Ltd., LLC was insured by a tower of D&O insurance with a Policy Period from August 5, 2004 to August 5, 2005. This was later extended to August 11, 2005 (the "04/05 Policy"). After the August 11, 2005 IPO, Refco, Inc. ("Refco") was insured by a tower of Public Company D&O insurance with a Policy Period from August 11, 2005 to August 11, 2006 (the "05/06 Policy").

**<u>Private Company Policy Tower – The 04/05 Policy</u>**

**HCC Primary** – The Primary Policy on the 04/05 Policy tower (the "04/05 Primary") was written by HCC. The 04/05 Primary provided a $10 million Limit of Liability, excess a retention of $500,000. This 04/05 Primary provided coverage pursuant to two Insuring Agreements:

(A) The Insurer will pay to or on behalf of the Insured Persons Loss arising from Claims first made against them during the Policy Period or Discovery Period (if applicable) for Wrongful Acts.

(B) The Insurer will pay to or on behalf of the Insured Organization Loss arising from Claims first made against it during the Policy Period or Discovery Period (if applicable) for Wrongful Acts.

The 04/05 Primary excluded Claims based on Wrongful Acts allegedly committed prior to June 4, 2004. Coverage for E&O clams also was excluded.

**Greenwich First Excess** – The Greenwich first excess layer to the 04/05 Policy tower (the "Greenwich 04/05 Policy") insured $10 million excess of the $10 million 04/05 Primary. The Greenwich 04/05 Policy followed form to the terms and conditions of the 04/05 Primary Policy.

The Greenwich 04/05 Policy included a Pending and/or Prior Litigation Exclusion at Endorsement 5 which excludes Claims related to litigation pending prior to August 5, 2004.

**Axis Second Excess** – The Axis second excess layer to the 04/05 Policy tower (the "Axis 04/05 Policy") insured $10 million excess of the $20 million in Underlying Limits. The Axis 04/05 Policy followed form to the 04/05 Primary, or any more restrictive Underlying Policy. The Axis 04/05 Policy repeats the exclusion for Pending and/or Prior Litigation as of August 5, 2004.

The Axis 04/05 Policy also contains a Manuscript Application Endorsement at Endorsement 2, stating:

> In consideration of the premium charged, it is agreed by the Insurer and the Insureds that the application or proposal dated February 8, 2005 and submitted to *Axis Reinsurance Company* on *U.S. Specialty Insurance Company's* form shall be accepted by the Insurer as the Application for this Policy.

> Any and all references to an Application or application in this Policy shall mean the application or proposal described above. The Insurer has relied upon all statements, warranties and other information and documents contained in or submitted with such other application or proposal as if they were submitted directly to Insurer using its own Application form.

Endorsement 2 is marked effective August 5, 2004 and is dated April 25, 2005.

**Public Company Policy Tower – The 05/06 Policy**

**HCC Primary** – The Primary Policy on the 05/06 Policy tower (the "05/06 Primary") was written by HCC. The 05/06 Primary provided a $10 million Limit of Liability, excess retentions of nil/$500,000/$500,000. This 05/06 Primary provided coverage pursuant to two Insuring Agreements:

(A) The Insurer will pay to or on behalf of the Insured Persons Loss arising from Claims first made during the Policy Period or Discovery Period (if applicable), against the Insured Persons for Wrongful Acts, except when and to the extent that the Company has paid such Loss to or on behalf of the Insured Persons as indemnification or advancement.

(B) The Insurer will pay to or on behalf of the Company Loss arising from:

(1) Claims first made during the Policy Period or the Discovery Period (if applicable) against the Insured Persons for Wrongful Acts, if the Company has paid such Loss to or on behalf of the Insured Persons as indemnification or advancement, and/or

(2) Securities Claims first made during the Policy Period or the Discovery Period (if applicable) against the Company for Wrongful Acts.

Coverage also was extended pursuant to Endorsement 11, to include Derivative Demand Investigative Costs:

The Insurer will pay to or on behalf of the Company all Derivative Demand Investigation Costs incurred by the Company as a result of a Derivative Demand first received by the Company's Board of Directors and reported in writing to the Insurer during the Policy Period or the Discovery Period, if purchased, up to the amount of the Derivative Demand Investigation Costs Sub-Limit [$250,000].

Coverage was further extended pursuant to Endorsement 15, to include Controlling Shareholder Coverage:

The Insurer will pay to or on behalf of the Controlling Shareholder Loss arising from a Securities Claim first made during the Policy Period or the Discovery Period (if applicable) against such Controlling Shareholder for Wrongful Acts, provided, that one or more Insured Persons and/or the Company are and remain co-defendants in such Securities Claim along with such Controlling Shareholder.

Phillip Bennett was defined as the Controlling Shareholder. A $300,000 retention was to apply to Defense Costs under this coverage extension, but did not apply to any other Loss under the extension.

**Lexington First Excess** – The Lexington first excess layer to the 05/06 Policy tower (the "Lexington 05/06 Policy") insures $7.5 million excess of the $10 million 05/06 Primary. The Lexington 05/06 Policy follows form to the terms and conditions of the 05/06 Primary Policy.

The Lexington 05/06 Policy also includes a Pending and Prior Litigation Exclusion at Endorsement 5 which excludes Claims related to litigation pending on or prior to August 4, 2004.

**Axis Second Excess** – The Axis second excess layer to the 05/06 Policy tower (the "Axis 05/06 Policy") provides a Limit of Liability of $10 million excess of $17.5 million in Underlying Limits. The Axis 05/06 Policy follows form to the terms and conditions of the 05/06 Primary Policy, or any more restrictive Underlying Policy.

The Axis 05/06 Policy contains a Manuscript Application Endorsement at Endorsement 5, stating:

In consideration of the premium charged, it is agreed by the Insurer and the Insureds that the application or proposal signed *February 8, 2005* and submitted to *Axis Reinsurance Company* on *U.S. Specialty Insurance Company's* form shall be accepted by the Insurer as the Application for this Policy.

Any and all references to an Application or application in this Policy shall mean the application or proposal described above. The Insurer has relied upon all statements, warranties and other information and documents contained in or submitted with such other application or proposal as if they were submitted directly to Insurer using its own Application form.

Endorsement 5 is marked effective August 11, 2005 and is dated September 11, 2005.

The Axis 05/06 Policy also contains a Knowledge Exclusion Endorsement at Endorsement 6 which states:

In consideration of the premium charged, it is agreed that this Policy does not respond to Claims based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance, situation, transaction, or event, which as of the inception date of the Policy Period, any Insured had knowledge and had reason to suppose might give rise to a Claim that would fall within the scope of the insurance afforded by this Policy.

Endorsement 6 is marked effective August 11, 2005 and is dated September 11, 2005.

The Axis 05/06 Policy notes a Prior and Pending Claim Date of June 4, 2004.

**February 8, 2005 HCC Application**

Phillip Bennett completed an HCC application "for Directors, Officers and Private Organization Liability Coverage" and signed it on February 8, 2005. This application asks at Question 12:

(a) Have any claims been made during the last 5 years against any person or entity proposed for this insurance in his or her capacity as a director, officer or trustee of any corporation or organization? __ Yes __ No
If yes, please provide complete details (use a separate sheet of paper, if necessary):

(b) Is any person or entity proposed for this insurance aware of any fact, circumstance or situation involving the Applicant or any Insured Person or Organization which he, she or it has reason to believe might result in a claim being made? __ Yes __ No
If yes, please provide complete details (use a separate sheet of paper, if necessary):

Without prejudice to any other rights of the Insurer, it is understood and agreed that the Insurer will not be liable under any policy that may be issued on the basis of this Application to make any payment of Loss, including Defense Costs, in connection with any Claim arising out of, based upon or attributable to any claim, fact, circumstance or situation disclosed or required to be disclosed in response to questions 12(a) and 12(b).

Bennett did not check either box for Questions 12(a) and 12(b).

**January 14, 2005 Axis Warranty**

Axis requested and received a warranty (the "Axis Warranty"). The Axis Warranty states:

(a) No person(s) or entity(ies) proposed for this insurance is cognizant of any fact, circumstance, situation, act, error or omission which he/she/it has reason to suppose might afford grounds for any Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance, EXCEPT: [Louis Capital Markets, LP v. Refco Group Ltd., LLC, et al.]

(b) No person(s) or entity(ies) proposed for this insurance is cognizant of any inquiry, investigation or communication which he/she/it has reason to suppose might give rise to a Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance.

It is agreed by the undersigned on behalf of all Insureds under the Policy, that with respect to the above statements, that if such knowledge exists, any claim arising therefrom is excluded from the proposed insurance.

The Axis Warranty is dated January 14, 2005, and was signed by Phillip Bennett, "on behalf of all Insureds under the Policy," on January 21, 2005.

## COVERAGE DISCUSSION

The Noticed Matters are excluded from coverage under both the Axis 04/05 Policy and the Axis 05/06 Policy based on: (1) the Axis Warranty; and (2) the Application for the Axis 04/05 Policy and the Axis 05/06 Policy. Moreover, the Noticed Matters are additionally excluded under the Axis 05/06 Policy based on: (1) the Claim made date; and (2) the Knowledge Exclusion. Axis also reserves its rights to rescind both Policies based on material misrepresentation in the application. Finally, additional terms and conditions further serve to exclude or limit coverage if coverage were otherwise available, which it is not. All of the foregoing is detailed below.

Each of the Noticed Matters is excluded from coverage under the Axis 04/05 Policy and the Axis 05/06 Policy pursuant to the Axis Warranty, attached at Exhibit B. Each of the Noticed Matters is brought in connection with the alleged financial fraud orchestrated by Mr. Bennett, among others. It is inconceivable that Mr. Bennett was not aware of the alleged fraud when he executed the Axis Warranty "on behalf of all Insureds under the Policy." The Axis Warranty explicitly excludes coverage for all Insureds for any Claim arising from the undisclosed knowledge. Accordingly, each of the Noticed Matters is excluded from coverage for all Insureds and Axis hereby denies coverage.

Each of the Noticed Matters also is excluded from coverage based on the Application for the Axis 04/05 Policy and the Axis 05/06 Policy.[1] Question 12(b) to the Application required disclosure of any known "fact, circumstance or situation. . . [which]

---

[1]     The Axis 04/05 Policy contains a Manuscript Application Endorsement at Endorsement 2, stating:

In consideration of the premium charged, it is agreed by the Insurer and the Insureds that the application or proposal dated February 8, 2005 and submitted to Axis Reinsurance Company on U.S. Specialty Insurance Company's form shall be accepted by the Insurer as the Application for this Policy.

Any and all references to an Application or application in this Policy shall mean the application or proposal described above. The Insurer has relied upon all statements, warranties and other information and documents contained in or submitted with such other application or proposal as if they were submitted directly to Insurer using its own Application form.

The Axis 05/06 Policy also contains similar wording at Endorsement 5. Accordingly, the February 8, 2005 application was explicitly incorporated as the application for the Axis 04/05 Policy (Private Company) and again when Axis issued the Axis 05/06 Policy (Public Company).

might result in a claim being made." The Application further states that Axis will not be "liable under any policy that may be issued on the basis of this Application to make any payment of Loss, including Defense Costs, in connection with any Claim arising out of, based upon or attributable to any claim, fact, circumstance or situation disclosed or required to be disclosed in response to questions 12(a) and 12(b)." Mr. Bennett had a duty to disclose the alleged financial fraud in answer to Application question 12(b). His failure to disclose such fraud excludes coverage for any Claim brought in connection with the financial fraud. Accordingly, Axis is further denying coverage for each of the Noticed Matters because each is brought in connection with information which should have been disclosed in Application question 12(b).

We note that the Axis Warranty and the Application do not contain an adjudication requirement. We further note that Axis's denial of coverage on these two grounds is as to all Insureds. The Axis Warranty and the Application were filed on behalf of all Insureds. Accordingly, Axis denies coverage for each of the Noticed Matters because each of the Noticed Matters arises out of information which was known to Mr. Bennett, and others, at the time he completed the Axis Warranty and the Application, on behalf of all Insureds.

In addition to the Axis Warranty and the Application, Axis separately denies coverage under the Axis 05/06 Policy for each of the Noticed Matters because each is a Claim first made before the inception of the Axis 05/06 Policy, on August 11, 2005. The Noticed Matters are interrelated, as defined in Condition (C) of the 05/06 Primary Policy.[2] All of the Noticed Matters arise out of the financial fraud allegedly orchestrated by Mr. Bennett, and others whereby unreported loans were made between various entities in an effort to disguise financial losses. This alleged fraud was reflected in the financial statements which are the subject of the Noticed Litigation. Additionally, the BAWAG action concerns Mr. Bennett's loan transactions in connection with the alleged fraud. The bankruptcy court adversary proceedings and state court tort actions arise from Refco customers' inability to access assets held by Refco – which assets were inaccessible due to the alleged fraud. Finally, the Sillam action alleged fraud in the Refco financial statements issued in connection with the IPO. Accordingly, each of the Noticed Matters is connected to the allegedly fraudulent scheme to manipulate Refco's financial results and Axis is treating each of the Noticed Matters as a single interrelated Claim. The Noticed Matters are deemed a Claim first made on the date the first such Noticed Matter was made. The Sillam action raised related allegations in its earlier June 30, 2005 complaint. This places a Claim made date for the Noticed Matters at least as early as June 30, 2005.[3] As this is prior to the August 11, 2005 inception of the Axis 05/06

---

[2] Condition (C) of the 05/06 Primary Policy states:

> All Claims alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single Claim and will be considered to have been made at the time the earliest such Claim was made.

[3] The Sillam action references an earlier September 8, 2004 complaint which would also potentially bring the Claim Made date prior to the inception of the Axis 05/06 Policy.

Policy, the Noticed Matters would constitute a Claim Made prior to the Axis 05/06 Policy Period.

Axis further denies coverage under the Axis 05/06 Policy based on the Knowledge Exclusion Endorsement. The Knowledge Exclusion Endorsement excludes coverage for any Claims based on facts any Insured had knowledge of at the inception of the Policy. Each of the Noticed Matters is brought in connection with the alleged financial fraud orchestrated by Mr. Bennett, among others. As with the Axis Warranty, we think it inconceivable that Mr. Bennett was not aware that his actions "might give rise to a Claim that would fall within the scope of the insurance afforded by this Policy" on the inception date of the Axis 05/06 Policy, August 11, 2005. Coverage on this basis is not only denied as to Mr. Bennett, but also as to all Insureds under the Policy.

In addition to the above grounds for denial of coverage for the Noticed Matters, Axis reserves its right to rescind the Axis 04/05 Policy and the Axis 05/06 Policy on the basis of fraud in the Application. The Application required Refco to attach, as part of the Application, audited financial statements for the two years preceding the Application. Refco has since admitted that its financial statements from 2002 through 2005 cannot be relied on. As noted above, both the Axis 04/05 Policy and the Axis 05/06 Policy were issued in material reliance upon the Insured's representations in all parts of the Application, including the attached financial statements. Accordingly, Axis reserves its right to rescind the Axis 04/05 Policy and the Axis 05/06 Policy. Axis explicitly reiterates our March 1, 2006 letter wherein Axis issued the Axis 05/06 Policy, which letter is hereby incorporated by reference. In that letter Axis noted that the issuance and delivery of the Axis 05/06 Policy should not be interpreted as a ratification of the existence of a valid insurance contract.

*      *      *

While the foregoing is dispositive of Axis's coverage responsibilities in connection with the Noticed Matters, additional terms and conditions would serve to limit or exclude coverage if the Noticed Matters were not excluded in their entirety, which they are. For the sake of completeness, we will detail those terms and conditions which would also limit or exclude coverage of the Noticed Matters.[4]

---

The Sillam action further references an earlier April 25, 2003 complaint brought in France. We do not currently have a translated version of this April 25, 2003 complaint, but it may contain related allegations which would dictate a Claim Made date for the Noticed Matters of April 25, 2003, prior to the inception of the 04/05 Policy. Accordingly, coverage would also be denied under the Axis 04/05 Policy.

[4] The Noticed Matters have only been submitted to Axis for coverage under the Axis 05/06 Policy. Accordingly, our discussion in this section focuses only on the Axis 05/06 Policy. Axis has herein denied coverage for the Noticed Matters under the Axis 04/05 Policy, but other coverage limitations may exist if coverage were otherwise afforded under the Axis 04/05 Policy, which it is not. Axis will provide a more detailed coverage analysis under the Axis 04/05 Policy if Insureds were to submit the Noticed Matters for coverage under the Axis 04/05 Policy. Axis reserves all rights available in the Axis 04/05 Policy, in law, and in equity, including, but not limited to, the right to rescind the Axis 04/05 Policy.

KAUFMAN BORGEEST & RYAN LLP
442053_1                    Page 11

The Axis 05/06 Policy follows form to the Primary Policy, or more restrictive Underlying Insurance. Axis directs your attention to the definition of Loss in the Lexington 05/06 Policy. The Lexington 05/06 Policy does not include Defense Costs within its definition of Loss. Accordingly, Axis adopts this more restrictive definition of Loss. As such, Defense Costs are not covered by the Axis 05/06 Policy.

The Axis 05/06 Policy, at Clause IX(A), requires that the Insured give notice of any Claim to Axis contemporaneously and in the same manner as notice is required to be given to HCC. The Primary Policy, at Condition B(1) and (4), requires that notice of Claims be given as soon as practicable, in writing, and by certified mail. To the extent that Axis did not receive notice as soon as practicable and in the prescribed manner, Axis reserves its rights.

As noted above, the 05/06 Primary Policy only insures the Refco entity (and Refco Subsidiaries) for Securities Claims and Derivative Demand Investigative Costs. Certain of the Noticed Matters do not name individual defendants and do not qualify as Securities Claims. The 05/06 Primary Policy, at Condition D(3), provides for an allocation where a Claim contains covered and non-covered matters. Axis reserves its right to exclude from coverage any Claims that are not Securities Claims against Refco or any of its Subsidiaries.

The 05/06 Primary Policy provides coverage pursuant to Insuring Agreements A and B(1) for Insured Persons. Insured Persons is defined to include present and past directors or officers of Refco, and employees solely with respect to Securities Claims. **For each individual named as a defendant in the Noticed Matters at Exhibit A, please identify: (1) current position, if currently employed; (2) date the current position was assumed; (3) any prior positions and dates prior positions were held; and (4) whether Refco will be indemnifying the individual. If Refco is permitted or required to indemnify and/or if Refco has determined that it will or will not indemnify any of the individual defendants, please provide us with a copy of the Board resolution providing such indemnification decision.**

The 05/06 Primary Policy also provides coverage based on Refco Subsidiaries. Subsidiary is defined at Definition (O) of the 05/06 Primary Policy as any entity:

(1) during any time on or before the inception of the Policy Period in which [Refco Inc] owns or owned more than 50% of the issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent thereof), either directly or indirectly through one or more other Subsidiaries; or

(2) created or acquired during the Policy Period during any time in which, as a result of such creation or acquisition, [Refco Inc.] owns more than 50% of the issued and outstanding securities representing the right to vote for the election of such entity's directors (or the legal equivalent

thereof), either directly or indirectly through one or more other Subsidiaries.

An entity ceases to be a Subsidiary when [Refco Inc.] ceases to own more than 50% of its issued and outstanding securities representing the right to vote for the election of such entity's directors (or legal equivalent thereof), wither directly or indirectly through one or more other Subsidiaries. The coverage afforded under this Policy will respect to Claims against a Subsidiary or any Insured Person thereof will apply only in respect of Wrongful Acts committed or allegedly committed after the effective date that such entity becomes a Subsidiary and prior to the time that such entity ceases to be a Subsidiary.

**For each entity named as a defendant in any of the Noticed Matters at Exhibit A, please identify: (1) whether such entity is or ever was a Subsidiary; (2) the effective date such entity became a Subsidiary; and (3) if applicable, the effective date such entity ceased to be a Subsidiary.** Axis reserves its right to deny coverage for any entity named as a defendant in the Noticed Matters which is not Refco Inc. or a Subsidiary, as defined above.

Endorsement 15 of the 05/06 Primary Policy extends coverage to Philip Bennett as Controlling Shareholder for Securities Claims where he is co-defendant with another Insured Person or the Company. To the extent that certain of the Noticed Matters are not Securities Claims, coverage would not be available under this Endorsement. Also, even if certain of the Noticed Matters are Securities Claims, coverage under this Endorsement 15 would only be available where, and so long as, another Insured Person and/or the Company is a co-defendant with Mr. Bennett. Axis also notes Clause (8) of Endorsement 15 which amends the Change in Control section of the 05/06 Primary Policy. This change limits coverage under Endorsement 15 to Wrongful Acts allegedly committed prior to Refco's bankruptcy filing on October 17, 2005. Axis reserves its rights to deny coverage under this Endorsement 15 for any Claims based on Wrongful Acts allegedly committed on or after October 17, 2005.

Additionally, the definition of Loss is limited to amounts insurable by law. It is well-settled that Loss does not include the restoration or disgorgement of ill-gotten gain. Thus, insurance cannot be used to pay an Insured for amounts an Insured wrongfully acquires or is forced to return, or to pay the corporate obligations of the Insured. Accordingly, pursuant to the well-known <u>Vigilant</u>, <u>Conseco</u>, and Level 3 cases, any amounts eventually sought as disgorgement would not be recoverable as Loss.

Exclusion (A) of the 05/06 Primary Policy excludes Loss in connection with a Claim:

Arising out of based upon or attributable to the gaining by any Insured of any profit or advantage to which such Insured was not legally entitled; provided, that this EXCLUSION (A) will apply only if there has been a

final adjudication adverse to such Insured establishing that the Insured gained such a profit or advantage

To the extent that any Insured is subject to a final adjudication establishing that the Insured received any profit or advantage to which such Insured was not legally entitled, Axis reserves the right to deny coverage for such Insured.

Exclusion (B) of the 05/06 Primary Policy excludes Loss in connection with a Claim:

Arising out of, based upon or attributable to the commission by any Insured of any criminal or deliberately fraudulent or dishonest act; provided that this EXCLUSION (B) will apply only if there has been a final adjudication adverse to such Insured establishing that the Insured so acted

To the extent that any Insured is subject to a final adjudication establishing that the Insured committed a criminal or deliberately fraudulent or dishonest act, Axis reserves the right to deny coverage for such Insured.

Axis has not yet identified and established the relationship between or among each of the parties to each of the Noticed Matters. The "Insured vs. Insured" exclusion at Exclusion (F) of the 05/06 Primary Policy, as modified by Endorsement 15, may serve to exclude certain of the Noticed Matters from coverage. Axis reserves its rights accordingly.

Further to Axis's above denial based on the Claim made date of this interrelated Claim, Axis specifically notes Exclusion (H) of the 05/06 Primary Policy which excludes Claims:

Arising out of, based upon or attributable to facts or circumstances alleged, or to the same or related Wrongful Acts alleged or contained, in any claim which has been reported, or with respect to which any notice has been given, under any policy of which this Policy is a renewal or replacement or which it may succeed in time

**Please provide us with copies of any notices of claims or circumstances sent in respect of any policy of which this Policy is a renewal or replacement, including, but not limited to, the 04/05 Policy tower.** Axis reserves its rights to deny coverage for any matters excluded subject to this Exclusion (H).

The Axis 05/06 Policy only applies excess of and does not contribute with any other valid and collectable insurance, pursuant to Condition (G)(1) of the 05/06 Primary Policy. **Please provide us with a schedule of any applicable insurance available to Refco, Inc., any Subsidiaries, or any Insured Persons which is not otherwise noted in**

**this letter.** To the extent that other insurance is available to such Insureds, Axis reserves it right to deny coverage.

Certain of the Noticed Matters allege that Refco improperly denied access to customer accounts as a result of the alleged fraud orchestrated by Mr. Bennett, and others. Endorsement 6 to the 05/06 Primary Policy excludes Claims, in relevant portion:

> Arising out of, based upon or attributable to any actual or alleged rendering of or failure to render, whether by the Company or by any Insured Person, any service for others for a fee; provided, that this exclusion will not apply to a Claim against an Insured Person for a Wrongful Act in connection with the management or supervision of the Company or any division or group therein.

Axis reserves its right to deny coverage for any matter properly excluded by this Endorsement 6.

Refco has been the subject of a well-publicized SEC investigation.[5] Endorsement 14 to the 05/06 Primary Policy notes that the "Insurer will not be liable to make any payment of Loss in connection with a Claim arising out of, based upon or attributable to any [Wells Notice or SEC Investigation]." It appears that several of the Noticed Matters are based upon the SEC Investigation. Accordingly, any Claim "arising out of, based upon or attributable to" the SEC Investigation would be excluded and Axis reserves its rights.

Axis reminds Insureds of Condition (D)(1) of the 05/06 Primary Policy which states, in relevant part:

> The Insureds may not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the Insurer's prior written consent. Only those settlement, stipulated judgments and Defense Costs to which the Insurer has consented will be recoverable as Loss under this Policy. The Insurer's consent may not be unreasonably withheld; provided, that the Insurer will be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim.

No settlement of a covered Claim will be binding upon Axis without Axis's express consent and Axis reserves its rights accordingly. Axis specifically notes that consent by an Underlying Insurer is not a substitute for Axis's consent.

Axis further reminds Insureds, especially given the Insured's bankruptcy posture, of Condition (K) to the 05/06 Primary Policy which states that "[n]o assignment of

---

[5] We are also aware that Refco received a Wells Notice during the Policy Period, but are not privy to the subject matter thereof. **Please provide us with a copy of the Wells Notice and any response thereto.** Axis reserves its rights in connection with this Wells Notice accordingly.

interest under this Policy will bind the Insurer without the Insurer's written consent." Axis specifically notes that consent by an Underlying Insurer is not a substitute for Axis's consent and Axis specifically reserves its rights in this regard.

Finally, Axis notes Condition (H)(1) to the 05/06 Primary Policy which notes, in relevant part, that "the Insureds will give the Insurer all information, assistance and cooperation that the Insurer my reasonably request."

This letter is not intended to be an exhaustive recitation of all potentially applicable terms, conditions or exclusions of the Axis 04/05 Policy or the Axis 05/06 Policy. Nothing in this letter is intended to, or does waive any of Axis's rights, privileges or defenses under the Axis 04/05 Policy or the Axis 05/06 Policy, at law, or in equity, all of which are expressly reserved. Axis reserves the right to alter, supplement or modify this statement of its coverage position as other and additional information may become available. Axis's denial of coverage of the Noticed Matters is necessarily based upon information that has been made available at this point. If you have any other information we should consider, please let us know.

If you have any questions in connection with the foregoing, please do not hesitate to contact the undersigned.

Very truly yours,

KAUFMAN BORGEEST & RYAN LLP

Wayne E. Borgeest

Enclosures
Exhibit A – Noticed Matters
Exhibit B – Axis Warranty

cc:
Tracy Forsyth, Axis
Leslie Ahari, Ross Dixon & Bell LLP, Counsel to US Specialty
Barbara Seymour, D'Amato & Lynch, Counsel to Lexington

## EXHIBIT A

### Schedule of Noticed Litigation

1. Frontpoint Financial Services Fund, LP, On Behalf of Plaintiff and All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston LLC, Goldman, Sachs & Co., No. 05-cv-08663-GEL, (S.D.N.Y. 10/11/05).

2. Jonathan Glaubach, Individually and on Behalf of all Others Similarly Situated v. Refco Inc., Phillip R. Bennett, Gerald Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley and Scott A. Schoen, No. 05-cv-08692, (S.D.N.Y. 10/12/05).

3. Miriam Lieber, Individually And On Behalf of All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M. Sherer, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc of America Securities, LLC., Merrilly Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank Securities, Inc., J.P. Morgan Securities Inc., and Grant Thornton LLP, No. 05-cv-08667-LAP, (S.D.N.Y. 10/12/05).

4. United States of America v. Phillip R. Bennett, No. 05-MAG-1720, (S.D.N.Y. 10/12/05).

5. Todd Weiss, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M. Sherer, No. 05-cv-08691-GEL, (S.D.N.Y. 10/12/05).

6. Varun Mehta, Derivatively on Behalf of Refco Inc. v. Phillip R. Bennett, William J. Sexton, Gerald M. Sherer, Joseph J. Murphy, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston, Goldman, Sachs & Co., Banc Of America Securities LLC, Deutsche Bank Securities, JP Morgan, Merrill Lynch & Co., Sandler O'Neill & Partners, L.P., HSBC And Thomas H. Lee Partners, L.P., and Refco, Inc., A Delaware corporation, No. 05-cv-08748, (S.D.N.Y. 10/14/05).

7. Anthony L. Wakefield, Individually and on Behalf of All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald J. Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc Of America Securities, LLC, Merrill Lynch, Pierce, Fenner & Smith Inc. Deutsche Bank Securities, Inc., J.P. Morgan Securities Inc., Sandler O'Neill

& Partners, L.P., HSBC Securities (USA) Inc., William Blaire & Company, L.L.C., Harris Nesbitt Corp., CMG Institutional Trading, LLC, Samuel A. Ramirez & Company, Inc., Muriel Siebert & Co., Inc., The Williams Capital Group, L.P., and Utendahl Capital Partners, L.P., No. 05-cv-08742-GEL, (S.D.N.Y. 10/14/05).

8.  Banesco Holding C.A., Banesco International Bank Corp., Banesco International Bank Inc. and Banesco Banco Universal C.A. Panama Branch v. Refco, Inc. and Refco Capital Markets, Ltd., No. 05603681 (Supreme Court of New York, 10/17/05).

9.  Miura Financial Services v. Refco, Inc. and Refco Capital Markets, Ltd., No. 05603682 (Supreme Court of New York, 10/17/05).

10. Multiplicas Casa De Bolsa v. Refco, Inc. and Refco Capital Markets, Ltd., No. 05603683 (Supreme Court of New York, 10/17/05).

11. Jacob Baker, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M. Sherer, No. 05-cv-08923, (S.D.N.Y. 10/19/05).

12. Craig Becker, On Behalf of Himself and All Others Similarly Situated v. Refco, Inc., Phillip R. Bennett, Gerald M. Sherer, Leo R. Brietman, David H. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Grant Thornton, LLP, Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc of America Securities LLC, Liberty Corner Capital, Refco Group Holdings Inc., No. 05-cv-08929-GEL, (S.D.N.Y. 10/20/05).

13. Bruce Nathanson, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Grant Thornton LLP, Credit Suisse First Boston, Goldman, Sachs & Co., Banc of America Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank Securities, Inc., JP Morgan Securities Inc., Liberty Corner Capital, and Refco Group Holdings Inc., No. 05-cv-08926-GEL, (S.D.N.Y. 10/20/05).

14. American Financial International Group – Asia, LLC, individually and on behalf of all other similarly situated v. Refco, Inc., Refco F/X Associates, LLC, Phillip R. Bennett and Does 1 through 50, et al., No. 05-cv-08988-PKC, (S.D.N.Y. 10/21/05).

15. Ravindra Mettupatti v. Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, Nathan Gantcher, David Harkins, Scott L. Jaeckel, Thomas Lee, Ronald L.

O'Kelley, Scott A. Schoen,  Credit Suisse First Boston LLC, Goldman, Sachs & Co., Banc of America Securities LLC,  Deutsche Bank Securities Inc., JP Morgan Securities Inc., Pierce, Fenner & Smith Inc., No. 05-cv-09048,  (S.D.N.Y. 10/24/05).

16. Todd Weiss, Individually and On Behalf of All Others Similarly Situated v. Phillip R. Bennett and Gerald M. Sherer, No. 05-cv-09126, (S.D.N.Y. 10/26/05).

17. Bankruptcy Trust Of Gerard Sillam, Gerard Sillam v. Refco Group LLC, Refco Overseas Ltd., Phillip Bennett, Refco Group Holdings Inc, Liberty Corner Capital, New York Stock Exchange Inc, Grant Thornton LLP, Grant Thornton UK LLP, Thomas H Lee Partners LP, Thomas H Lee Partners Fund V, Thomas H Lee, Scott A Schoen, David V Harkins, Gerald M Sherer, Leo R Breitman, Scott Jaeckel, Nathan Gantcher, Ronald O Kelley, Halim Saad, Dennis A Klejna, Mark Slade, Julian Courtney, Richard Reinert, David Campbell, Credit Suisse First Boston LLC, Goldman Sachs & Co, Bank Of America Securities LLC, Merrill Lynch Pierce Fenner & Smith Inc, Deutsche Bank Securities Inc, JP Morgan Securities Inc, Sandler O Neil & Partners LP, HSBC Securities USA Inc, William Blair & Company LLC, Harris Nesbitt Corp, CMG Institutional Trading LLC, Samuel A Ramirez & Company Inc., Muriel Siebert & Co Inc, The William Capital GLP, Utendahl Capital Partners, et al., No. 05603931 (Supreme Court of New York 11/04/05).

18. Scott K. Weit, Individually and On Behalf of All Others Similarly Situated v Phillip R. Bennett, Gerald M. Sherer, Leo R. Breitman, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Nathan Gantcher, Credit Suisse First Boston, Goldman, Sachs & Co., Grant Thornton LLP, Banc of  America Securities LLC, Merrill Lynch Pierce, Fenner & Smith Inc., Deutsche Bank Securities, Inc., J.P. Morgan Securities, Inc., Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., William Blair & Company, L.L.C., Harris Nesbitt Corp., CMG  Institutional Trading LLC, Samuel  A. Ramirez & Company, Inc., Muriel Siebert & Co., Inc., The Williams Capital Group, L.P., Utendahl Capital Partners, L.P., Liberty Corner Capital, and Refco Group Holdings, Inc., No. 05-cv-09611-GEL,  (S.D.N.Y. 11/11/05).

19. Bawag  P.S.K.  Bank  Für  Arbeit  Und  Wirtschaft  Und  Österreichische Postsparkasse Aktiengesellschaft v. Refco, Inc.; Refco Group Holdings, Inc.; The Phillip R. Bennett Three Year Annuity Trust; Refco Capital Markets, Ltd.; Refco Group Ltd., LLC; Bersec International LLC; Kroeck & Associates, LLC; Marshall Metals LLC; New Refco Group Ltd., LLC; Refco Administration LLC; Refco Capital LLC; Refco Capital Holdings LLC; Refco Capital Management LLC; Refco Capital Trading LLC; Refco Finance Inc.; Refco Financial LLC; Refco Fixed Assets Management LLC; Refco F/X Associates LLC; Refco Global Capital Management LLC; Refco Global Finance Ltd.; Refco Global Futures LLC; Refco Global Holdings LLC; Refco Information Services LLC; Refco

Mortgage Securities, LLC; Refco Regulated Companies, LLC; Summitt Management, LLC; Refco Securities LLC; Refco Clearing LLC; Phillip R. Bennett; John Does 1-10; And XYZ Corporations 1-10, The Last Two Names Being Fictitious, Inc., et al., No. 05-03161-rdd (Bankr. S.D.N.Y., 11/16/05).

20. Markwood Investments v. Refco Capital Markets, Ltd. and Refco Securities LLC, No. 05-03166-rdd (Bankr. S.D.N.Y., 11/17/05).

21. Banco De America Central, S.A. v. Refco Capital Markets, Ltd., No. 05-03171-rdd (Bankr. S.D.N.Y., 11/18/05).

22. BAC International Banks, Inc. v. Refco Capital Markets, Ltd., No. 05-03170-rdd (Bankr. S.D.N.Y., 11/18/05).

23. Reserve Invest (Cyprus) Ltd. v. Refco Capital Markets, Ltd., Michael W. Morrison, and Richard Heis, Michael W. Morrison, and Richard Heis, No. 05-03168-rdd (Bankr. S.D.N.Y., 11/18/05).

24. City of Pontiac General Employees' Retirement System, On Behalf of Itself and All Others Similarly Situated v. Phillip R. Bennett, Thomas H. Lee Partners, L.P., Thomas H. Lee, Gerald M. Sherer, Scott A. Schoen, Bank of America Corp., Banc of America Securities LLC, Deutsche Bank AG, Deutsche Banc Securities, Inc., Credit Suisse Group, Credit Suisse First Boston LLC, Goldman Sachs Group, Inc., Goldman Sachs & Co., J.P. Morgan Securities, Inc., J.P. Morgan Chase & Co., Merrilly Lynch, Pierce, Fenner & Smith, Inc., Merrill Lynch & Co., Inc. Sandler O'Neill & Partners, L.P., HSBC Securities (USA) Inc., HSBC Holdings plc and Grant Thornton LLP, No. 05-cv-09941, (S.D.N.Y. 11/23/05).

**EXHIBIT B**

Axis Warranty[1]

 REFCO

Refco Group Ltd., LLC
550 West Jackson Boulevard
Suite 1300
Chicago, IL 60661
ph 312 788 2000
www.refco.com

January 14, 2005

Axis
Connell Corporate Park
Three Connell Drive
Berkeley Heights, NJ 07922

To Whom It May Concern:

With respect to the 2nd excess layer of insurance for Axis Reinsurance Company the undersigned officer of Refco Group, Ltd., LLC declares that the following statements are true:

    a.  No person(s) or entity(ies) proposed for this insurance is cognizant of any fact, circumstance, situation, act, error or omission which he/she/it has reason to suppose might afford grounds for any Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance, EXCEPT:

*See attached*

    b.  No person(s) or entity(ies) proposed for this insurance is cognizant of any inquiry, investigation or communication which he/she/it has reason to suppose might give rise to a Claim, as such term is defined within the Policy, such as would fall within the scope of the proposed insurance.

It is agreed by the undersigned on behalf of all insureds under the Policy, that with respect to the above statements, that if such knowledge exists, any claim arising therefrom is excluded from the proposed insurance.

This letter, together with other documents and information publicly available to and obtained by the Insurer, shall be deemed incorporated into and become part of the Application and the Policy.

Company name: *Refco Group LTD. LLC*

Signature: *[signature]*

Title: *PRESIDENT & CEO.*
      (Chairman of the Board or President)

Date: *Jan 21. 2005.*

---

[1] Also attached to the Axis Warranty, but not included here are: (1) a January 14, 2005 memo from Ellen Brooks to Phillip Bennett requesting Bennett complete the warranty; and (2) a January 14, 2005 letter from Grant Cornehls to Ellen Brooks describing and attaching the Louis Capital Markets, L.P. v. Refco Group Ltd., LLC, et al. suit. It appears the letter and suit were both attached to the memo sent to Bennett. Axis does not contend that the Luis Capital Markets suit is related to the Noticed Matters.