```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
AXIS REINSURANCE COMPANY,                                   :
                                                            :
                        Plaintiff,                          :      07 Civ. 7924 (GEL)
                                                            :      07 Civ. 9420 (GEL)
             -v-                                            :      07 Civ. 9842 (GEL)
                                                            :      07 Civ. 10302 (GEL)
PHILIP R. BENNETT et al.,                                   :
                                                            :
                        Defendants.                         :
                                                            :
------------------------------------------------------------x      **OPINION AND ORDER**
                                                            :
TONE N. GRANT et al.,                                       :
                                                            :
                        Plaintiffs,                         :
             -v-                                            :      07 Civ. 9843 (GEL)
                                                            :
AXIS REINSURANCE COMPANY,                                   :
                                                            :
                        Defendant.                          :
                                                            :
------------------------------------------------------------x
```

Wayne E. Borgeest, Joan M. Gilbride, Robert A. Benjamin, Kaufman Borgeest & Ryan LLP, Valhalla, NY, for Appellant Axis Reinsurance Company.

Greg A. Danilow, Michael F. Walsh, Weil, Gotshal & Manges LLP, New York, NY, for Appellees Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, and Scott A. Schoen.

Helen B. Kim, Katten Muchin Rosenman LLP, Los Angeles, CA, for Appellee Dennis A. Klejna.

Norman L. Eisen, Thomas G. Macauley, Laura E. Neish, Zuckerman Spaeder LLP, New York, NY, for Appellee Tone N. Grant.

Stuart I. Friedman, Ivan Kline, Friedman & Wittenstein, New York, NY, for Appellees William M. Sexton and Gerald M. Sherer.

Jeffrey T. Golenbock, Deborah A. Adler, Golsenbock Eiseman Assor Bell & Peskoe LLP, New York, NY, for Appellee Phillip R. Bennett.

Barbara Moses, Rachel Korenblat, Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C., New York, NY, and Gabriel Del Virginia, Esq., New York, NY, for Appellee Robert C. Trosten.

John J. Jerome, Timothy E. Hoeffner, Saul Ewing LLP, New York, NY, for Appellee Joseph Murphy.

Richard Cashman, Haller Ehrman LLP, New York, NY, for Appellee Philip Silverman.

GERARD E. LYNCH, District Judge:

Axis Reinsurance Company ("Axis") appeals from orders of the bankruptcy court (1) dismissing Axis's complaint in Adv. Pro. No. 07-1712 (RDD), and (2) granting summary judgment to the appellees (the "Insureds")[1] on their request for advancement of defense costs in Adv. Pro. Nos. 07-1712 (RDD), 07-2005 (RDD), and 07-2032 (RDD).[2] For the reasons stated below, the orders will be affirmed.

---

[1] The appellees are Leo R. Breitman, Nathan Gantcher, David V. Harkins, Scott L. Jaeckel, Thomas H. Lee, Ronald L. O'Kelley, Scott A. Schoen, Dennis A. Klejna, Joseph Murphy, William M. Sexton, Gerald M. Sherer, Philip Silverman, Tone N. Grant, Phillip R. Bennettt, and Robert C. Trosten. Each of the appellees is a former officer or director or Refco.

[2] The bankruptcy court consolidated these three adversary proceedings and, in November 2007, this Court withdrew the bankruptcy reference for these consolidated proceedings. (See Doc. #5, No. 07 Civ. 7924.)

## DISCUSSION

**I.  Dismissal of Axis's Complaint**

Preliminarily, Axis has waived its appeal of the bankruptcy court's order dismissing its complaint because Axis has failed to challenge that ruling on the merits.  In its complaint, Axis sought a declaration that it had no obligation to the Insureds under the terms of a 2005-2006 Directors and Officers ("D&O") liability insurance policy it issued to Refco (the "2005-2006 Axis Policy").  See Axis Reinsurance Company v. Bennett, Nos. 07 Civ. 7924, 08 Civ. 3242, 2008 WL 2485388, at *1 (S.D.N.Y. June 19, 2008).  The bankruptcy court dismissed Axis's complaint based on the "substantial overlap of the underlying factual issues raised in th[e] coverage determination action commenced by Axis and the underlying tort and criminal proceedings . . . pending before" this Court.[3]  (Gilbride Decl. Ex. E.)  Nowhere in its appeal brief does Axis challenge the substantial overlap doctrine or the bankruptcy court's application of that doctrine to this case.  Accordingly, Axis has waived any appeal of the bankruptcy court's dismissal order.

Instead of challenging the merits of the dismissal order, Axis contends that the bankruptcy court's retention of the counterclaims brought by certain insureds (Klejna, Sexton, Sherer, Murphy, and Silverman) was inconsistent with its decision to dismiss the complaint.  These counterclaims, however, sought a declaration of coverage based on the argument that the exclusions upon which Axis relies to deny coverage under the 2005-2006 Axis Policy are not, in

---

[3] As the Court has previously explained, the collapse and ensuing bankruptcy of Refco in October 2005 triggered an onslaught of civil and criminal litigation against certain Refco officers and directors (the "Underlying Actions"), many of which remain pending before this Court.  See Axis, 2008 WL 2485388, at *2 (collecting cases).

fact, part of that Policy. Resolution of that question — in contrast to the claim in Axis's complaint that the exclusions were triggered by Bennett's actual prior knowledge of the Refco fraud — does not require a determination regarding any factual issues that substantially overlap with those in the Underlying Actions. Accordingly, as the Insureds correctly contend, the bankruptcy court's retention of the counterclaims was entirely appropriate and consistent with its decision to dismiss Axis's complaint.

## II.     Advancement of Defense Costs

Axis's primary contention on appeal is that the bankruptcy court erred in granting summary judgment to the Insureds on their request for advancement of defense costs. The Court reviews the legal conclusions of the bankruptcy court *de novo*. See Kuhl v. United States, 467 F.3d 145, 147 (2d Cir. 2006). Under New York law, where an insurance contract includes the duty "to pay for the defense of its insured, that duty is a heavy one" and "exists whenever a complaint against the insured alleges claims that *may* be covered under the insurer's policy." In re WorldCom, Inc. Sec. Litig., 354 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (emphasis added) (internal quotation marks omitted). In order to relieve itself of the duty to pay defense costs based on an exclusion, the insurer has the burden of demonstrating, *inter alia*, that "no legal or factual basis exists that would *potentially* obligate the insurer to indemnify the insured." Trustees of Princeton Univ. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., Index No. 650202/06, 2007 WL 1063870, at *5 (N.Y. Sup. Apr. 10, 2007) (emphasis added); see Federal Ins. Co. v. Tyco Int'l Ltd., Index No. 6005007/03, 2004 WL 583829, at *6 (N.Y. Sup. Mar. 5, 2004) (noting that "the insurer has no duty if, *as a matter of law*, the allegations in the complaint could not give

4

rise to any obligation to indemnify, or the allegations fall within a policy exclusion" (emphasis added)).

In this case, Condition (D)(2) of the 2005-2006 Primary Policy imposes a duty on Axis to pay for the defense of the Insureds:

> The Insurer will pay covered Defense Costs on an as-incurred basis. If it is finally determined that any Defense Costs paid by the Insurer are not covered under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer.

(Gilbride Decl. Ex. I, at Condition (D)(2).)[4] The Court's recent Opinion and Order in Axis Reinsurance Company v. Bennett makes clear that whether Axis has an obligation to provide coverage to the Insureds in the Underlying Actions is very much in dispute. See 2008 WL 2485388, at *8-16. Indeed, the parties disagree not only as to whether the exclusions Axis relies upon to deny coverage were triggered, but also whether certain of the exclusions themselves are even part of the 2005-2006 Axis Policy. See id. Accordingly, because the governing insurance contract imposes a duty on Axis to pay for the defense of the Insureds, and because there is plainly a "reasonable possibility" that Axis will be required to indemnify the Insureds in some or all of the underlying tort and criminal proceedings, Continental Cas. Co. v. Rapid-American Corp., 80 N.Y.2d 640, 648 (N.Y. 1993), Axis clearly has a duty to pay the Insureds' defense costs in connection with the Underlying Actions.

---

[4] The 2005-2006 Primary Policy, which provided $10 million of primary coverage, was issued by U.S. Specialty Insurance Company ("U.S. Specialty"). Lexington Insurance Company ("Lexington") provided the first excess layer of $7.5 million in excess of $10 million. Axis provided the second excess layer of $10 million in excess of $17.5 million. See Axis, 2008 WL 2485388, at *2.

Generally, New York law provides that where coverage is disputed and a liability policy includes the payment of defense costs, "insurers are required to make contemporaneous interim advances of defense expenses . . . , subject to recoupment in the event it is ultimately determined no coverage was afforded." National Union Fire Ins. Co. of Pittsburgh, PA v. Ambassador Group, Inc., 556 N.Y.S.2d 549, 553 (1st Dep't 1990); see Trustees of Princeton, 2007 WL 1063870, at *5. Axis contends, however, that the specific provisions of the insurance contract in this case require a different outcome. In particular, Axis points to the language in Condition (D)(2) requiring only "*covered* Defense Costs" to be advanced on an "as-incurred" basis. (Gilbride Decl. I, at Condition (D)(2) (emphasis added).) Based on this language, Axis contends that prior to a court adjudication of coverage, Axis has the unilateral right to determine whether defense costs are "covered" and that, in this case, it has made a good faith determination that the Insureds' claims are not covered as a result of the application of certain exclusions in the 2005-2006 Axis Policy (the "Axis Exclusions"). See Axis, 2008 WL 2485388, at *8-16 (describing the Axis Exclusions in detail and discussing their applicability).

In addition, Axis notes that, in contrast to the exclusions contained in the D&O policies issued by other insurers, none of the Axis Exclusions requires a "final adjudication" before taking effect. (Gilbride Decl. Ex. I, at Exclusions (A) and (B) (providing that personal profit and fraud exclusions in 2005-2006 Primary Policy "will apply only if there has been a *final adjudication* adverse to [the] Insured" (emphasis added)).) According to Axis, the second sentence of Condition (D)(2) — referring to a "final determin[ation]" of coverage — applies only in situations where the insurer's exclusion itself requires a "final adjudication" that the

6

insured acted in violation of the exclusion.[5]  Because none of the Axis Exclusions contains any such requirement, Axis asserts that the second sentence of Condition (D)(2) is wholly inapplicable to the Insureds' claims under the 2005-2006 Axis Policy.

In sum, based on the "covered defense costs" language in Condition (D)(2) and the absence of any final adjudication requirement in its exclusions, Axis contends that the terms of the governing insurance contract expressly authorize it to apply its exclusions to deny coverage unilaterally — and thus refuse to advance defense costs — unless and until a court determines that the costs are "covered" under the 2005-2006 Axis Policy.[6]

The Insureds, understandably, interpret the terms of Condition (D)(2) quite differently. According to the Insureds, as long as a claim on its face "falls within the policy's insuring agreement, it is covered unless and until there is a final determination that an exclusion applies." (Ins. Mem. 25.)  Contrary to Axis's claim, the Insureds assert that the second sentence of

---

[5] According to Axis, where an exclusion requires a "final adjudication," the insurer advances defense costs subject to a reservation of rights and the second sentence of Condition (D)(2) provides a mechanism to recover payments, if appropriate, when that adjudication occurs. (Axis Mem. 20.)  Both U.S. Specialty and Lexington advanced defense costs to the Insureds subject to a reservation of rights.  See Axis, 2008 WL 2485388, at *3.

[6] Axis additionally contends that Condition (D)(3) in the 2005-2006 Primary Policy, which contemplates the allocation of loss amounts between covered and non-covered losses, supports its contention that it may unilaterally decline coverage and refuse to advance defense costs.  Condition (D)(3), however, only applies where "Loss covered by this Policy and loss not covered by this Policy are both incurred in connection with a single Claim." (Gilbride Decl. Ex. I, at Condition (D)(3).)  As the bankruptcy court concluded (see Gilbride Decl. Ex. H, at 44:18-23), Condition (D)(3) is inapplicable to this case because Axis has denied coverage for all losses, and thus there is no allocation to perform.  See Associated Elec. & Gas Ins. Servs., Ltd. v. Rigas, 382 F. Supp. 2d 685, 698 (E.D. Pa. 2004) (discussing analogous provision that applied only if a claim "includes both covered and non-covered matters," and concluding that, because "[t]he Carriers have made it clear that in this case they believe that *all* of the claims against the . . . movants are not covered," that provision "does not apply" (emphasis added)).

Condition (D)(2) — which explicitly references the repayment of defense costs "[i]f it is finally determined that any Defense Costs paid by the Insurer are not covered under this Policy" (Gilbride Decl. Ex. I, at Condition (D)(2)) — is fully applicable in this case and supports their interpretation of the advancement provision.  Moreover, the Insureds embrace the bankruptcy court's observation that "nowhere does [the insurance contract] state . . . that the insurer can unilaterally or in the exercise of reasonable judgment or in any other way withhold defense costs absent a court determination in the event of a dispute as to whether defense costs are covered." (Ins. Mem. 18-19, quoting Gilbride Decl. Ex. H, at 44:25-45:5.)  The Insureds also contend that the lack of a "final adjudication" requirement in the Axis Exclusions is irrelevant since the 2005-2006 Axis Policy "follows the form" of the 2005-2006 Primary Policy, and nothing in the Axis Policy states that those Exclusions are not subject to the "final determination" language of Condition (D)(2).  See Hartford Accident & Indem. Co. v. Pacific Employers Ins. Co., 862 F. Supp. 160, 162 (S.D. Tex. 1994) ("Follow-form policies extend the limits and operate under the rules of [the primary policy].  Unless there is an express exception to the form of the primary insurance, the excess carrier must act according to the primary insurance policy's terms.").  The Insureds thus effectively contend that Axis has failed to demonstrate why the general rule under New York law — which requires the insurer to make "contemporaneous interim advances of defense expenses . . . , subject to recoupment in the event it is ultimately determined no coverage [is] afforded," Trustees of Princeton, 2007 WL 1063870, at *5 — does not apply in this case.

     In essence, the central dispute among the parties centers on who bears the burden of uncertainty regarding whether defense costs are ultimately covered.  Axis's interpretation of Condition (D)(2) is not unreasonable on its face.  That interpretation, however, places enormous

8

emphasis on the word "covered." Given the general rule governing advancement of defense costs under New York law, the mere inclusion of a single word, which can hardly be said to make an unambiguous change in the provision's literal meaning, seems, at best, an unusual way to effectuate such a fundamental change in the parties' expectations. Similarly, although Axis contends that the lack of any "final adjudication" requirement in the Axis Exclusions renders the "final[] determin[ation]" clause in Condition (D)(2) inapplicable to the Insureds' claims in this case, nothing in the 2005-2006 Axis Policy expressly states that the Exclusions are not subject to the "final[] determin[ation]" clause, and the mere omission of a final adjudication requirement in the Exclusions would seem to be a highly opaque way to make such a change.

As evidenced by the parties' competing contentions, Axis and the Insureds have presented two plausible interpretations of Condition (D)(2). Indeed,

> there are common sense reasons for each interpretation . . . . From the point of view of an insurer, to wait for a judicial determination of the elements listed in the [Axis] Exclusion[s] means that insurers may have to pay substantial sums for defense costs even though it is later determined there were misrepresentations in an insurance policy application. From the point of view of an insured, it is unfair to give an insurer the ability to escape its duty to advance payment merely because it asserts the [Axis] Exclusion[s], without any judicial decision.

Rigas, 382 F. Supp. 2d at 699. Because Condition (D)(2) is susceptible to two reasonable interpretations, the Court concludes that the provision is ambiguous.

Under New York law, if a court concludes that an insurance policy is ambiguous, then the burden shifts to the insurer to prove that its interpretation is correct. "[I]f extrinsic evidence is available but inconclusive, the burden shifts at the trial stage; in the absence of extrinsic evidence, the burden shifts at the summary judgment stage." Morgan Stanley Group Inc. v. New

England Ins. Co., 225 F.3d 270, 276 (2d Cir. 2000) (citations omitted).  Because the language of Condition (D)(2) is ambiguous, Axis bears the burden of demonstrating that its interpretation of that provision is correct.  As the bankruptcy court noted, however, Axis "has offered up no extrinsic evidence in support of its position." (Gilbride Decl. Ex. H, at 45:21-23.)  As a result, New York law dictates that Condition (D)(2) must be construed in favor of the Insureds.  See In re WorldCom, 354 F. Supp. 2d 455, 464 (noting that "the duty to pay defense costs is 'construed liberally and any doubts about coverage are resolved in the insureds favor,'" quoting Tyco, 2004 WL 583829, at *6).[7]  As a policy matter, moreover, this outcome makes eminent sense as adopting Axis's interpretation of Condition (D)(2) would effectively render the advancement obligation worthless.  See Nu-Way Envtl., Inc. v. Planet Ins. Co., No. 95 Civ. 573, 1997 WL 462010, at *3 (S.D.N.Y. Aug. 12, 1997) (ordering advancement of defense costs and noting that "to hold otherwise would not provide insureds with protection from financial harm that insurance policies are presumed to give").

In sum, if an insurer "wants the unilateral right to refuse a payment called for in the policy, the policy should clearly state that right." Rigas, 382 F. Supp. 2d at 701.  The Axis Policy at issue here does not do so.  Accordingly, because the Underlying Actions could potentially give rise to an obligation to indemnify, Axis must advance defense costs to the Insureds in connection with those Actions, subject to repayment at some future time if it is

---

[7] Although the bankruptcy court held that the meaning of Condition (D)(2) "is not ambiguous," the court also stated that, "based on the absence of any extrinsic evidence offered to clarify any alleged ambiguity, the provision would be construed in favor of the insureds and against the insurer here." (Gilbride Decl. Ex. H, at 50:21-25.)

"finally determined" by a court that they are not covered. (Gilbride Decl. Ex. I, at Condition (D)(2).)

## CONCLUSION

For the reasons stated above, the bankruptcy court's orders dismissing Axis's complaint and granting the Insureds' request for advancement of defense costs is affirmed.

SO ORDERED:

Dated: New York, New York
      June 26, 2008

                                            GERARD E. LYNCH
                                            United States District Judge